UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CR. NO. 4:24-CR-00324 |
| | : | |
| v. | : | |
| | : | (Chief Judge Brann   ) |
| **PAUL D. POLEN**, | : | |
| | : | |
| Defendant. | : | |

# I N F O R M A T I O N

THE UNITED STATES ATTORNEY CHARGES:

At times material to this Information:

## COUNT 1
18 U.S.C. § 371
(Conspiracy to engage in theft or bribery concerning
programs receiving Federal funds)

## BACKGROUND

1. The defendant, PAUL D. POLEN, was a resident of Lock

Haven, Pennsylvania, in the Middle District of Pennsylvania.

2.  PAUL D. POLEN worked at NURSING HOME 1, in Lock

Haven, PA, from in or around the early 1990s until in or around 2022.

Over the course of his employment, PAUL D. POLEN held multiple

roles, including, first, Director of Security and later other roles, including Director of Workers' Compensation.

3. NURSING HOME 1 was a non-profit organization under the control of Clinton County and for which the Clinton County Commissioners served as trustees. Throughout PAUL D. POLEN'S employment at NURSING HOME 1, NURSING HOME 1 received annual benefits in excess of $10,000 under Medicare, a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

4. NURSING HOME 1 maintained a self-funded workers' compensation plan. Thus, it assumed the financial responsibility to pay for its own employees' workers' compensation claims.

5. PHYSICIAN 1 was an emergency medicine physician in and around Lock Haven, PA.

## THE CONSPIRACY AND ITS OBJECTS

6. Paragraphs 1 through 5 are incorporated here.

7. From on or about 2002 until on or about 2022, in Clinton County, within the Middle District of Pennsylvania, and elsewhere, the defendant,

**PAUL D. POLEN**,

did knowingly conspire, confederate, and agree, together and with other persons both known and unknown to the United States, to commit offenses against the United States and to defraud the United States, that is: to embezzle, steal, obtain by fraud, convert to the use of a person who was not the rightful owner without authority, and intentionally misapply property worth at least $5,000, namely, approximately $528,450, owned by and under the care, custody, and control of NURSING HOME 1, an organization receiving annual benefits in excess of $10,000 under Medicare, a Federal program involving a grant, contract, subsidiary, loan, guarantee, insurance, and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(1)(A).

3

## MANNER AND MEANS OF THE CONSPIRACY

8. PAUL D. POLEN ran the workers' compensation program at NURSING HOME 1 on a day-to-day basis from the early 1990s until the time that his employment ended in or around 2022.

9. PAUL D. POLEN's duties involved completing and submitting paperwork needed for NURSING HOME 1 employees to receive workers' compensation. NURSING HOME 1 paid PAUL D. POLEN a salary for his work administering the program.

10. In or around 2002, PAUL D. POLEN approached PHYSICIAN 1 and offered him a position as a physician consultant at NURSING HOME 1, as the prior physician consultant was leaving his role. PAUL D. POLEN proposed the opportunity to PHYSICIAN 1 on the conditions that PHYSICIAN 1 would report to PAUL D. POLEN and would pay half of PHYSICIAN 1's compensation to PAUL D. POLEN as a kickback each month. PHYSICIAN 1 agreed to this arrangement.

11. PHYSICIAN 1's responsibilities as physician consultant included conducting physical examinations of NURSING HOME 1 employees and evaluating employees' conditions for purposes of their

4

workers' compensation claims. PHYSICIAN 1's duties generally required, at most, a few hours of work per month.

12. PHYSICIAN 1 also provided the medical evaluation needed for PAUL D. POLEN's own workers' compensation claims, which resulted in PAUL D. POLEN working a reduced schedule for the same compensation.

13. PAUL D. POLEN and PHYSICIAN 1 agreed to conceal the monthly kickback payments from PHYSICIAN 1 to PAUL D. POLEN.

14. PHYSICIAN 1 made the monthly kickback payment to PAUL D. POLEN by writing a check for the benefit of Paul D. Polen, Inc., a company that PAUL D. POLEN created and ran. PAUL D. POLEN made his wife the president of Paul D. Polen, Inc. in name only.

15. The size of the payments from PHYSICIAN 1 to PAUL D. POLEN grew along with increases to PHYSICIAN 1's compensation. In 2002, the monthly payment was initially approximately $1,700 per month. Later, it grew to approximately $2,500 per month.

OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

16. PAUL D. POLEN and PHYSICIAN 1 took various steps to keep the monthly kickback payments secret from the management, trustees, and other employees of NURSING HOME 1, including regularly exchanging payment at the residence of PHYSICIAN 1 rather than at the workplace.

All in violation of Title 18, United States Code, Section 371.

**THE UNITED STATES ATTORNEY FURTHER CHARGES:**

FORFEITURE ALLEGATION

The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982.

Pursuant to Title 18, United States Code, Section 982, upon conviction of the offense in Count One of this Information, the defendant,

## PAUL D. POLEN

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982, any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to: $628,450 in U.S. Currency.

If any of the property described above, as a result of any act or omission of the defendant:

       a.    cannot be located upon the exercise of due diligence;

       b.    has been transferred or sold to, or deposited with, a third party;

       c.    has been placed beyond the jurisdiction of the court;

       d.    has been substantially diminished in value; or

       e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute

7

property pursuant to Title 21, United States Code, Section 853(p).

All pursuant to 18 U.S.C. § 982.

GERARD M. KARAM

United States Attorney

RAVI ROMEL SHARMA                    12/4/2024
Assistant United States Attorney     Date

8